UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID COOKE,<br><br>               Plaintiff,<br>v.<br><br>DITECH FINANCIAL LLC,<br><br>               Defendant. | Civil Case No.:<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of Defendant, Ditech Financial LLC's, ("Defendant") repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Defendant has placed hundreds of telephone calls to Plaintiff's cellular telephone without his prior express consent.

3. Many of these calls occurred after Plaintiff asked Defendant to stop calling, and even threatened Defendant with a lawsuit if it continued to call.

4. All of these telephone calls were made using an automatic telephone dialing system as defined at 47 U.S.C. § 227(a)(1).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6. This Court has personal jurisdiction over Defendant because Defendant conducts a significant amount of business transactions within this District and because Defendant is headquartered in this District.

1

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business transactions within this District and because Defendant is headquartered in this District.

## PARTIES

8. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Issaquah, Washington. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

9. Defendant Ditech Financial LLC is, and at all times mentioned herein was, a Delaware corporation headquartered at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034.

10. Defendant Ditech Financial LLC is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## FACTS

11. Beginning in approximately February 2014, and continuing for more than a year, Defendant placed hundreds of telephone calls to Plaintiff's cellular telephone, number 425-###-0458.

12. These calls originated from Defendant, including, but not limited to, Defendant's telephone numbers 253-288-0055, 253-333-6366, and 253-333-5180.

13. Defendant called from dozens of telephone numbers in addition to the aforementioned.

14. These calls were all in an effort to collect past due payments on Plaintiff's mortgage, but many were made even after Plaintiff brought his mortgage current.

15. Plaintiff never provided Defendant with prior express consent to make any of these calls.

16. Even if he had, Plaintiff revoked consent on numerous occasions, both when the calls first began and continuing throughout the period during which Defendant called.

17. Specifically, Plaintiff revoked his consent in a number of calls, including but not limited to the following:

- on or about February 10, 2015 during a call with representative "Kayla," Plaintiff asked Defendant to stop calling; threatened lawsuit if the calls did not stop

- on or about February 14, 2015 during a call with representative "Alejandro," Plaintiff asked Defendant to stop calling and threatened to file a lawsuit if the calls did not stop;

- on or about April 3, 2015 during a call with representative "Paula," Plaintiff asked Defendant to stop calling and threatened to file a lawsuit if the calls did not stop; and

- in or around November 2015, during a call with an unknown female representative, Plaintiff asked Defendant to stop calling and threatened to file a lawsuit.

18. Despite these and other requests, the calls continued.

19. On or about December 13, 2015, Plaintiff called Defendant to clarify a bill, and the operator seemed unaware of any "stop calling" request on Plaintiff's account.

20. During at least some of the calls Defendant's representatives became abusive. For

example, during the February 10, 2015 call with Kayla, Kayla called Plaintiff an "imbecile."

21.  All of these calls were made using an "automatic telephone dialing system" as defined at 47 U.S.C. § 227(a)(1) and as explained in subsequent FCC regulations and orders. The system used by Defendant has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

22.  This capacity is evidenced by:

- the frequency of the calls;
- the persistence of the calls;
- an unnatural period of silence upon Plaintiff answering many of these calls;
- an audible "click" before an agent appeared on the line;
- "dead air" calls - many of the calls from Defendant's telephone numbers had no agent on the other line when Plaintiff answered; and
- Plaintiff's inability to stop the calls, which suggests that it was a machine doing the dialing and connecting Plaintiff to Defendant's representatives, rather than those representatives continuing to manually dial Plaintiff's telephone number.

23.  All of the above suggests that Defendant's calls used equipment that meets the definition of an "automatic telephone dialing system" in making calls to Plaintiff.

24.  In particular, an audible "click," dead air calls, and unnatural periods of silence are indicative of a "predictive dialer," which is an automatic telephone dialing system under the statute.

25.  Defendant used "Avaya Predictive Dialing System" for at least some of the calls to Plaintiff. Courts have found the Avaya system to be an "automatic telephone dialing system"

under the TCPA. *Harris v. World Fin. Network Nat'l Bank*, 867 F. Supp. 2d 888 (E.D. Mich. April 3, 2012).

26. Plaintiff has suffered actual injury as a result of Defendant's telephone calls, including, but not limited to, reduced device storage space, data usage, plan usage, tied up telephone line, lost time tending to the unwanted telephone calls and responding to Defendant's unlawful conduct, and the invasion of his privacy by calls continuing after he asked Defendant to stop calling.

27. Plaintiff is entitled to statutory damages and injunctive relief.

### FIRST CAUSE OF ACTION
### Violations of 47 U.S.C. § 227(b)(1)(A)(iii)

28. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

29. Defendant placed repeated calls to Plaintiff on his cellular telephone.

30. These calls all used an automatic telephone dialing system.

31. Plaintiff did not consent to Defendant placing such calls to his cellular telephone.

32. Furthermore, even if he had, Plaintiff asked Defendant to stop calling on numerous occasions.

33. The calls were not placed as a result of a situation affecting the health and safety of consumers.

34. The calls were not placed for "emergency purposes" as defined by 47 C.F.R. § 64.1200(f)(4).

35. Plaintiff is entitled to an award of $500 in statutory damages for each call made negligently, pursuant to 47 U.S.C. § 227(b)(3)(B).

36. Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly or willfully, pursuant to 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, David Cooke, prays for the following relief:

A. an order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227, *et seq.*;

B. an award of injunctive and other equitable relief prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

C. an award statutory damages;

D. an award of actual damages; and

E. such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: July 8, 2016

s/ Carlo Sabatini
Carlo Sabatini, PA 83831
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA 18512
Tel: 570.341.9000
Fax: 570.504.2769
ecf@bankruptcypa.com

*Pro hac vice* application to be filed for:

/s/ Jeremy M. Glapion
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
jmg@glapionlaw.com